# Funeral Benefit Association of the United States, Appellant, *v.* Col. Ellsworth Council No. 960.

*Beneficial associations—Assessments—Default — Suspension of subordinate body.*

Where an unincorporated beneficial association composed of subordinate councils provides, by its by-laws, that if any assessment levied upon an subordinate council remains unpaid for a time stated such "council in default shall without further action stand suspended from membership in this association," and there is no other remedy provided by the by-laws, the association, after the suspension of a local council has become effective by the automatic action of the by-law, cannot collect from such council assessments by legal proceedings.

Argued Oct. 27, 1916. Appeal, No. 285, Oct. T., 1916, by plaintiff, from decree of C. P. Northumberland Co., No. 401, in Equity, dismissing bill in equity in case of Funeral Benefit Association of the United States v. Col. Ellsworth Council, No. 960, Order of Independent Americans et al. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Bill in equity to collect assessments.

MOSER, J., filed the following opinion:

The Funeral Benefit Association of the United States, the plaintiff in this action, hereinafter called the "Association," is an unincorporated body, the by-laws of which in Section 2 of Article I provide: "This association is formed by the association together of councils and similar subordinate bodies of fraternal, patriotic and beneficial associations; which councils and similar subordinate bodies are hereinafter designated as 'Organizations', the membership of which organizations is confined to native-born white male Americans, who shall be at the time of their admission to such membership, between the ages of sixteen and forty-nine years, both inclusive,

which organizations pay funeral benefits to the beneficiaries or representatives of deceased members thereof; for the purpose of the mutual reimbursement of such organizations and of other such organizations hereinafter becoming members of this association, for losses incurred through the payment of such benefits in the manner in these laws hereinafter provided."

Colonel Ellsworth Council No. 960, Order of Independent Americans, the defendant in this action, hereinafter called the "organization" is an unincorporated fraternal beneficial society which has been a member of the said Funeral Benefit Association since the year 1905. To raise funds to reimburse the various organizations connected with the said association for losses incurred through the payment of funeral benefits, the said association levies an assessment upon each organization at a stated rate per member; the amount being determined in accordance with the number of members reported by the organization on the first day of the month in which the assessment is ordered. The assessment rate is fixed at the annual meeting of the association. The number of assessments to be ordered is left to the discretion of the board of managers of the said association, but at least twelve assessments must be ordered in each year. Prior to the eighth day of June, 1914, the assessment rate was fifteen cents per member. On that day, at the annual meeting of the association, the rate was increased to twenty cents per member. This assessment rate was fixed in June, 1914, as appears in Section 3 of Article VI of the by-laws, which reads as follows: "The assessment shall be twenty cents for each and every member upon the rolls of such organization on the first day of the month in which the assessment is ordered." The first section of the said article provides: "The regular monthly meeting of the Board of Managers of the association shall be held on or about the 20th day of each month, at which time applications for membership, shall be considered; applications for the payment of death claims

acted upon, assessments ordered to pay claims already favorably acted upon, and general business transacted." On the 25th day of June, 1914, the board of managers of the said association, at a regular meeting thereof, ordered an assessment against the defendant organization at twenty cents per member for one hundred eighty-three members, amounting to $36.60, being levied on the membership reported as of June first. On the 24th day of July, 1914, the said board of managers likewise ordered another assessment against the said defendant organization at twenty cents per member, on the membership as of July 1st, reported to be 173 members and amounting to $34.60. At the hearing it was conceded, and so stated upon the record by counsel for the plaintiff, that the June assessment should have been at the old rate of fifteen cents per member, since the change in the said rate was not made until the 8th day of the month while the assessment was levied as of the first. So that the plaintiff now claims of the defendant the sum of $27.25, for the assessment ordered in June and $34.60, for that ordered in July, 1914. (See notes of Tes. P. 25).

The defendant disapproved of the increase in the said assessment rate and refused to pay either of the assessments ordered as aforesaid. It is conceded that the defendant therefore stood suspended from membership in the said association on the last day of the second month following the said June assessment, under and by virtue of what is prescribed in the sixth section of the sixth article of the by-laws of the said association which reads: "Every organization failing to pay an assessment on or before the last day of the month following that within which such assessment shall have been ordered, shall be fined five cents additional for each and every member as per the assessment, and shall absolutely forfeit all benefits and advantages from this association based upon any death which may occur within such organization while said assessment and fine remain unpaid. No payment of any such assessment shall be considered made or received

until the payment of the said fine and no payment of any such assessment or fine shall give or revive any right to claim benefits for any death happening within any such organization during such arrearage or default. Should any assessment remain unpaid on the last day of the second month following that in which said assessment shall have been ordered, the organization in default shall, without further action, stand suspended from membership in this association."

It does not appear that an application to join the said association was signed or executed by the defendant, so that the contractual relations of these litigants and their mutual obligations have been established and are controlled exclusively by the by-laws of the association, the conduct of the parties and the general principles of law applicable to like circumstances and to cases of a similar nature. The defendant contends that it is not legally liable for the claims made by the plaintiff; that this case in controlled by the case of Johnston v. Anderson, 23 Pa. Superior Ct. 152, where, in a somewhat similar action, the contract was held to be unilateral and determinable at any time by the defendant without liability; that the payment of assessments was wholly voluntary on the part of the defendant.

The plaintiff's contention is, that, although the defendant forfeited its membership by failure to pay assessments, of which it had notice, within the time prescribed by the by-laws, it is liable for the assessments made before the forfeiture was actually consummated and while the membership still existed; that this case must be distinguished from the case of Johnston v. Anderson, supra, relied upon by the defendant as a favorable precedent, for two reasons, viz: (a) In the Anderson case the defendant was an individual and the plaintiff an unincorporated association composed of individuals, while in the instant case the defendant is an unincorporated beneficial society and the plaintiff is an association of such organizations; that the rule of law applied to life in-

surance premiums and the assessments of mutual beneficial societies does not apply in this case. (b) The by-laws of the plaintiff association contains a stipulation relative to withdrawals which did not appear in the by-laws of the plaintiff association in the Anderson case. This stipulation the plaintiff contends is decisive of the questions involved in this action. It is the eighth section of the first article and reads as follows: "Any organization desiring to withdraw from this association may do so, but the same shall be liable for all assessments ordered during the month in which notice of withdrawal is received by this association."

As to the first proposition:

In the case of Johnston v. Anderson, 23 Pa. Superior Ct. 152, the plaintiff was the receiver of the Odd Fellows Endowment Association, an unincorporated body composed of members of various lodges of Odd Fellows, for the purpose of paying benefits on the death of the members of their beneficiaries and not for profit. A fund was raised to pay these benefits by assessing the members. Anderson refused to pay his assessments and thereby forfeited his membership under a stipulation contained in the by-laws. The receiver sought to recover for the assessments levied before the time of the actual forfeiture. The court held, in effect, that the defendant's contract with the association was unilateral; that it was in the nature of a life insurance contract, where the insured is given insurance and protection so long as he pays for same and complies with the requirements of the policy. He received only the protection he purchases however, and, when he defaults in his payments, he forfeits his right to the insurance and loses all he has paid as premiums or assessments. In such cases the insurer has no power to compel the insured to continue his payments or to continue purchasing insurance. The purchase thereof and the payments made therefor are wholly voluntary and may be discontinued at any time at the pleasure of the insured. In the said case of Johnston v. Anderson, the

court cites with approval the case of Lehman v. Clark, 43 L. R. A. 648, where Mr. Justice PHILLIPS, after reviewing the decisions in various jurisdictions, on page 651 proceeds to say: "Under these authorities, a contract for insurance in any benevolent association is a unilateral contract, and by the association provision is made that, for a failure to pay the assessments made on a member who holds a certificate, all benefits he may have under and by virtue of such certificate, and all payments theretofore made, are forfeited. Such is the rule with reference to insurance under almost all circumstances. If any other rule should exist than that a contract is purely unilateral, then, in effect, a partnership would be formed by which every person insured would become liable to all others insured, and the benefits derived from life insurance would be rendered so doubtful and uncertain, and so prejudicial to those seeking insurance, that their individual interests would require them to abstain from taking out a policy or a certificate of membership."

Our effort must be to determine whether or not the said rule as applied to the defendant in the case of Johnston v. Anderson, 23 Pa. Superior Ct. 152, is likewise applicable to the defendant organization in the case at bar. The purpose of organization and the nature of the mutual obligations are quite similar in both cases. In the Anderson case a fund was raised by assessing the individuals, from which fund, funeral benefits were paid to the members' widows and orphans or beneficiaries. In the present case a fund is raised by assessing the organizations in a sum determined by the number of members, from which fund the organizations are reimbursed for funeral benefits paid to the beneficiaries of its members dying while in good standing. In the one case the association pays the funeral benefits direct; in the other case it pays them through the organization, but it pays only when proof of death is furnished, and only when the organization is required by law to pay and actually does pay those entitled to benefits. So that in the instant

case the members collectively contract with the association for funeral benefits which under the law is treated in many respects as a contract for life insurance. The organization buys this protection for its members but there is nothing in the arrangement or in the laws of the association whereby the association can compel the organization to continue buying.

While it is set forth in the by-laws that the association was formed for the purpose of the mutual reimbursement of the organizations connected therewith, for losses incurred through the payment of funeral benefits, and the association disavows any contract or relations whatsoever with the individuals but essays to deal wholly with the organizations as a class, the third section of the 1st article of the said by-laws provides: "Said organizations shall be entitled to receive from this association the sum of $250, or proportionate part thereof, according to the time of enrollment of the member, on the death in good standing in his organization of each member enrolled in class 'A,' and a further and additional sum of $250, or proportionate part thereof, according to the time of enrollment of the member, on the death in good standing in his organization of each member enrolled in Class 'B'; Provided, that such organizations are required by law to pay and do pay the said sums to the beneficiaries of said deceased members, respectively.".

It is obvious therefore, that regardless of the way in which the mutual obligations of the parties to this action have been established and are maintained, the contract amounts to an agreement upon the part of the association to insure funeral benefits and a respectable burial for each and every member of the defendant organization, for which the said members pay, through the organization, the sum of twenty cents per member per assessment. The dues and assessments usually and ordinarily paid by beneficial societies of the character of this defendant, to provide for and insure a respectable burial and, at least to some extent, to relieve the necessities of surviving de-

pendents, were paid to the plaintiff by this defendant at a stipulated sum per capita and must be regarded as having been paid for funeral benefits pure and simple. Upon the payment of an assessment by the defendant organization within the time prescribed by the by-laws, each and every member thereof was entitled to these benefits until the expiration of the time limit of the next succeeding assessment.

We are therefore of the opinion that so far as the questions involved in the first proposition are concerned the case at bar is controlled by the said case of Johnston v. Anderson, 23 Pa. Superior Ct. 152. With but slight alteration we might adopt the language of Judge GALBERTH used at pages 157 and 158 of the said case, and here assert: It should be kept in mind that the plaintiff association is an unincorporated society composed of organizations who have voluntarily associated themselves together for purposes beneficial and benevolent. It was doubtless foreign to the ideas of its organizers and those who subsequently entered into it that its requirements should bear down more heavily on any organization than it felt it could bear, or that it should continue beyond a period when it chose to be free from same. The door of forfeiture was left open and when once it passed through it the said organization was freed from all liability to the association and the association was freed from all liability, to it, and all mutual obligations were cancelled, by the fact of its suspension. The payment of assessments look to the future and not to the past, and by their payments or refusal to pay the organization exercised its option of continued membership or suspension, and when it discontinued its payments and its membership no liability followed it.

As to the second proposition:

The above-quoted eighth section of the first article of the by-laws of the said association provides that organizations withdrawing from the association will be liable

for all assessments ordered during the month in which notice of withdrawal is received by the association.

The defendant in this action did not withdraw from the plaintiff association, nor did it give any notice of withdrawal. Mr. Cadwallader, the secretary of the association, makes this clear in his testimony where he proceeds to explain that the defendant separated itself from the said association by failing and refusing to pay the assessments ordered by the board of managers, which default worked an automatic suspension under and by virtue of the sixth section of the sixth article of the said by-laws, hereinbefore referred to. It is contended by the plaintiff that the said eighth section of the first article embraces cases of suspension as well as withdrawals, and that the defendant is therefore liable for the assessments claimed in this action, under the provisions thereof. From the plain terms of the section it clearly pertains to withdrawals only; nothing whatever is said therein about suspension. It is only reasonable to presume, that if the association intended that this section should include cases of suspension, it would be so stated in clear language. It cannot be said that the defendant should have known that the said section of the by-laws included cases of suspension as well as withdrawals. The words are not used synonymously in the by-laws. In the copy appearing in the testimony it will be noticed that in the fifth section of the first article a distinction is made in the reinstatement of organizations that have separated themselves from the association by the different methods spoken of in the laws. It seems that the approval of a majority of the board of managers is sufficient to reinstate an organization that has been suspended or dropped, while the reinstatement of one that has withdrawn can only be effectuated by the adoption of a resolution at the regular annual convention of the association. The requirement prescribed for cases of withdrawal has no effect whatever upon organizations that suffer suspension; the words have a very different mean-

ing and designate dissimilar processes of separation. A formal withdrawal is a quite different act than to be derelict in payments or to withhold same, until the rules relative to suspensions operate so as to work a severance of relations. The effect of these various modes of separation may be advantageous or disadvantageous to either the association or the organization, but the method of departure is left to the option of the latter, and if it chooses to pursue a particular course it should not be compelled to comply with the requirements prescribed for organizations adopting another and a different course. The association framed and promulgated the by-laws and the section that is here under consideration; the presumption is that everything that is deemed necessary for its protection and accommodation was incorporated therein; that it read into this section exactly what it wanted included therein, and what it wanted the section to express; if there was any intention or desire that the said law should apply to cases of suspension, it certainly should have, and doubtless would have been so stated in unmistakable terms. There is very much doubt as to whether or not cases of suspension are embraced within the said by-law, and while the rights and liabilities of the defendant are regulated by the said by-laws, Myers v. Fritchman, 6 Pa. Superior Ct. 580, it is a well recognized rule in insurance cases that where the language is doubtful it should be most strongly construed against the insurer and in favor of the insured, Darlington v. Phœnix Mut. Fire Ins. Co., 194 Pa. 650; Johnston v. Anderson, 23 Pa. Superior Ct. 152, and so in the instant case the fact that the by-law is silent as to suspension and there is serious doubt whether such cases are affected thereby weighs heavily against the plaintiff and in favor of the negative side of the controverted question here involved.

We are therefore of the opinion that the defendant is not liable for the said assessments ordered in June and July, 1914, and claimed for in this action.

20 FUNERAL ASSN., Appel., *v.* ELLSWORTH COUNCIL.

Assignment of Error—Opinion of the Court. [66 Pa. Superior Ct.

And now, to wit, March 20, 1916, the bill is hereby dismissed at the costs of the plaintiff.

*Error assigned* was decree dismissing the bill.

*Alexander M. DeHaven,* with him *Stephen L. Gribbin,* for appellant.—When a contract provides that it shall become void on default in its performance by one of the parties, such party cannot take advantage of his own wrong by setting up such default, alone, as a means of escaping liability under the contract: Susq. Ins. Co. v. Leavy, 136 Pa. 499; Stockley v. Hartley Bros., 12 Pa. Superior Ct. 628.

*Charles C. Lark,* for appellees, cited: Funeral Benefit Assn. v. Hyatt Council, 62 Pa. Superior Ct. 578.

OPINION BY ORLADY, P. J., March 13, 1917:

The court below, in an exhaustive opinion, fully considered and satisfactorily answered every contention raised by the appellant in its assignments of error. The relation between the plaintiff and defendant bodies was severed by the voluntary act of the defendant. While the defendant body was not suspended as a punishment for violation of their law, the court finds as a fact that the two assessments, numbers 471 and 472, were allowed to remain unpaid on the last day of the second month following that in which the assessments were ordered, and, following the law governing the relation between the parent and subsidiary body, as described by the secretary of the plaintiff, "they automatically suspended themselves, and that suspension can only be removed by making application and paying the fees for reinstatement."

The controlling fact found by the trial judge was that the defendant did not withdraw, from the plaintiff association, nor give notice of any intention to withdraw, but separated itself from the association by failing and re-

fusing to pay the assessments ordered by the board of managers, which default worked an automatic suspension under and by virtue of the sixth section of the sixth article of their by-laws.

As we held, in construing this same by-law in Funeral Benefit Association v. Hyatt Council, 62 Pa. Superior Ct. 578, "The action of the council was voluntary in refusing to pay the assessment, and we are not concerned with the reasons prompting its action. They knew the by-laws governing the association, and that following the refusal to pay the assessment the result would be the automatic suspension of the council from membership therein. It did not seek reinstatement, but accepted the order of suspension from membership as conclusive of its future relation. The by-laws of the plaintiff are of their own making, and there is no provision for any individual liability for a preëxisting debt of the members of council after its suspension from the association." The plaintiff association, having provided a suspension penalty for nonpayment by a council of an assessment, and having exhausted it, cannot now invoke another and different one not mentioned in its by-laws."

Under the facts in this case, there is no confusion in regard to the relation of the defendant association under the by-laws, that is whether they should be treated as withdrawing, under Section 8, of Article IV, and remaining liable for assessments during the month in which notice of withdrawal is received, or on the other hand, considered as suspended from membership, after failing to pay two assessments under Section 6, of Article IV, of the by-laws. The plaintiff cannot now invoke a new remedy, or impose a different penalty than that prescribed by the by-laws.

The decree in the court below is affirmed.